**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**



Civil Action No.

DAVID MORRILL,

     *Plaintiff,*

v.

ALYSSA AARHAUS, 89th Troop Command Commander, Colorado National Guard;
BREN ROGERS, Assistant Adjutant General (Army), Colorado National Guard;
CHARLES BEATTY, Former Chief of Staff (Army), Colorado National Guard;
VIRGINIA USHER, Investigating Officer, Colorado National Guard;
KELSIE MCCALLUM, 101st Army Band Commander, Colorado National Guard;
JASON BYRNES, 101st Army Band First Sergeant, Colorado National Guard;

in their official capacities,

     *Defendants.*

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES
PURSUANT TO 42 U.S.C. § 1983**

---

     Plaintiff David Morrill states the following Complaint for Declaratory and Injunctive Relief against the named defendants in their official capacities:

**THE FIRST AMENDMENT PROTECTS THE FREE SPEECH OF CITIZEN SOLDIERS**

     1.    This case addresses an increasingly important yet rarely addressed constitutional concern, brought into focus by the following questions: Can the government restrict and punish constitutionally protected free speech of a U.S. citizen merely because the citizen serves part-time in the National Guard? Do National Guard commanders have carte blanche over the free speech and religious practices of subordinates apart from the military environment? Does Army

1

Equal Opportunity (EO) policy or the "Army Values" motto allow commanders to abridge the First Amendment rights of military service members in the event a service member expresses a disfavored viewpoint or practices a disfavored religion? If the Constitution means what it says, the answer to all the above must be NO. Rather, the free speech and religious practice of soldiers is to be "preserved to the maximum extent possible" (DoDI 1325.06, Enclosure _, paragraph 3(b)) and only in specific and mission-critical circumstances should military leaders be permitted to abridge the constitutional rights of Citizen-Soldiers.

2.      Regrettably, this case represents another chapter in the Colorado National Guard's (CONG) pursuit of its unstated policy of trying to harm and/or end the military careers of its soldiers based on its leaders' disagreement with constitutionally protected, off-duty expression – this time taking the additional and grossly offensive step of labeling a targeted soldier as a racist in retaliation. The irony of this action must not be missed, as the defamatory and damaging statements made by Defendants present *actual* Army EO implications connected to the military environment – exactly the context required for Defendants to have the authority to punish the Plaintiff as they did.

3.      On March 11, 2022, David Morrill ("Plaintiff") participated in an online video discussion as part of his religious ministry activity, discussing controversial issues from a conservative Christian perspective including politics, current events, and religious news. A partial transcript of the video is attached as **Exhibit 1**. Plaintiff, who serves part-time (usually on orders only two days a month) as a sergeant first class and operations sergeant in the Colorado National Guard, was not on any military orders, not on duty, and not in uniform, and expressed his political and religious views in a personal capacity. At or near the 4:09 mark, Plaintiff responded to an unprompted question concerning his status in the military and confirmed that he

2

was an "E-7" in the National Guard. No further reference to the military occurred. Near the

23:41 mark, Plaintiff expressed the opinion that George Floyd was not targeted by the police

based on race. At the 27:45 mark, Plaintiff expressed a negative and insulting opinion about

Kamala Harris. At the 35:57 mark, Plaintiff mocked the speech patterns of a public figure,

theological opponent and internet personality, Kyle J. Howard.

4.    On March 14, 2022, the CONG Joint Forces Headquarters Public Affairs Office

(PAO) received an email from Todd Wilhelm, a reporter and writer for "The Wartburg Watch," a

website which has publicly opposed Plaintiff's theological and political positions, claiming that

Plaintiff's statements violated UCMJ Article 88 *Contempt Toward Officials* and Article 134

*Conduct Unbecoming an Officer and a Gentleman*. This email is attached as **Exhibit 2**. On

March 16, 2022, Wilhelm publishes a post at www.thewartburgwatch.com attacking the religious

and political views of Plaintiff and the video's host, Pastor JD Hall, attached as **Exhibit 3**.

5.    On March 16, 2022, Plaintiff was informed by his unit commander that the video

in question was required to include a disclaimer informing viewers that views did not reflect

those of the Army or Colorado National Guard, as instructed in a September 15, 2021

memorandum from CONG Adjutant General Laura Clellan. This memorandum is attached as

**Exhibit 4**. Plaintiff explained to his commander that the CONG instruction requiring the

disclaimer was invalid as it did not properly  apply cited regulations, yet Plaintiff added the

requested verbiage to the video's description to accommodate to the request.

6.    On April 6, 2022, Colonel Charles Beatty, Colorado National Guard chief of staff

(Army) ("Defendant") appointed Major Virginia Usher ("Defendant") to officially investigate

Plaintiff's video statements. Despite her acknowledgement of the presence of the required

disclaimer, Defendant Usher's investigation concluded that Plaintiff's remarks about George

Floyd violated C.R.S. 28-3.1-549 *Cognizance of Disreputable Conduct* because "the nature of the comments do not align with Army values." Defendant Usher also determined that Plaintiff's comments about Kamala Harris were "derogatory" and violated *Cognizance of Disreputable Conduct* (despite the Vice President not being a member of the military chain of command), and that Plaintiff was contemptuous towards the President of the United States (despite no qualitative statement being made about the President). Defendant Usher further determined that Plaintiff violated *Cognizance* by mocking the way Kyle J. Howard speaks, noting that Howard was reported to be a person of mixed ethnicity - despite this fact never being mentioned by Plaintiff in the video. The investigation is attached as **Exhibit 5**.

7.      On August 6, 2022, Defendant Beatty, Commander of 89th Troop Command Brigade and Plaintiff's brigade commander notified Plaintiff that he intended to punish him under Article 28-3.1-114 (Non-judicial punishment, NJP) of the Colorado Code of Military Justice for violation of C.R.S. 28-3.1-549 *Cognizance of Disreputable Conduct* and C.R.S. 28-3.1-512 *Contempt Toward Officials*, giving Plaintiff three duty days to respond and scheduling the response for September 10, 2022. The NJP worksheet is attached as **Exhibit 6**.

8.      On September 9, 2022, Plaintiff provided Defendant Beatty with an eight-page memo defending his conduct (attached as **Exhibit 7**), citing his impeccable service record, describing the necessity of his First Amendment rights of free speech and religious expression pursuant to his online media and ministry work, and provided a lengthy explanation of the military and legal application of the statutes along with available case law and court opinions. Major Albana Alla of National Guard Trial Defense, advising Plaintiff, provided a memo (**Exhibit 8**) reminding Defendant Beatty that the Colorado Code of Military Justice (Colorado

4

Military Code, CCMJ) applies only to troops in a military status, and therefore Defendant Beatty lacked the jurisdiction to charge or punish Plaintiff for his conduct as a private citizen.

9.      On September 10, 2022, Plaintiff reported for duty to answer the planned punishment, yet Defendant Beatty delayed the proceedings without explanation. Defendant Beatty was replaced as Commander of 89th Troop Command Brigade by Colonel Alyssa Aarhaus ("Defendant") shortly thereafter.

10.     On December 3, 2022, Defendant Aarhaus executed the NJP against Plaintiff, demoting him from Sergeant First Class to Staff Sergeant with a six-month suspension of the punishment contingent on Plaintiff committing no further infractions. Defendant Aarhaus wrote an official memorandum containing a Letter of Reprimand (LOR) casting Plaintiff's off-duty expression as violating Army Equal Opportunity (EO) regulations due to his "remarks concerning race" – defaming Plaintiff as a racist with no explanation nor evidence. The memorandum is attached as **Exhibit 9**. Plaintiff immediately appealed the decision (attached as **Exhibit 10**), understanding that the existence of an official memorandum smearing him as a racist would grievously harm his long and decorated military career and reputation, implicate his service evaluations, and potentially affect the Qualitative Retention Board (QRB) deciding whether to allow him to continue to serve. In addition, the continued existence of a memorandum defaming Plaintiff as a racist presented serious mental and emotional distress, similar distress for Plaintiff's family and coworkers, and continuing damage to Plaintiff's career prospects and income earning potential.

11.     On January 6, 2023, Plaintiff's commander Kelsie McCallum ("Defendant") and immediate supervisor First Sergeant Jason Byrnes ("Defendant") submitted a service evaluation (NCOER, **Exhibit 11**) for Plaintiff which remarked that Plaintiff "experienced problems with

higher-echelon officers during rating period" and rated Plaintiff least qualified and last versus

other equally ranked soldiers. This was done despite Plaintiff's ongoing appeal of Defendant

Aarhaus's NJP, and despite Plaintiff's superior technical qualifications and career evaluation

history. On May 5, 2023, the evaluation was placed into Plaintiff's permanent military record.

12.    On September 7, 2023, Plaintiff was notified that Assistant Adjutant General Bren

Rogers ("Defendant") denied Plaintiff's appeal (attached as **Exhibit 12**). Despite CRS 28.3-1-

114.5 requiring the appeal to be "promptly decided," Defendant Rogers failed to provide a

response for nearly nine months after the appeal was filed.

13.    Plaintiff challenges the overbroad, constitutionally-violative application of the

Colorado Military Code by Defendants, as their application egregiously violates the First

Amendment speech and religious freedoms of the Plaintiff, establishes jurisdictional

encroachment of military authority into the private lives of citizen-soldiers, and effectively

provides an overbroad "blank check" to military commanders to punish their subordinates for

any and all free expression they personally disagree with. Defendants' contemptuous disregard

for the principles of free expression enshrined in the Constitution of the United States –

especially considering this court's recent taking as true that several of the very same defendants

"set out to indirectly end [the] military career via the Personnel Actions in retaliation for the

content of [Alan Kennedy's] political speech" *Kennedy v. Paul*, Civil Action No. 21-cv-772-

WJM-MEH (ECF No. 78 ¶ 16.) – demonstrates a willful disregard for and pattern of disrespect

for the fundamentals of free expression as represented in the Constitution the Defendants have

sworn to uphold. Defendants' actions – a seeming continuation of the Colorado National Guard's

difficulty in supporting the First Amendment protections of its soldiers – irreparably damages the

trust necessary to the military order and therefore represents a grave risk to the military readiness of the Colorado National Guard.

14.     Plaintiff also claims ongoing, severe, and irreparable reputational and emotional harm resulting from being defamed as a racist by trusted military leadership, particularly considering his impeccable and decorated military career as a performing, public-facing representative of the Colorado National Guard. The Colorado National Guard is a relatively small community, and being defamed as a racist in front of peers and subordinates continues to be devastating and damaging to Plaintiff's family, career, and honor.

## JURISDICTION AND VENUE

15.     This action arises under the Constitution and laws of the United States, including First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, for Defendants, sued in their official capacities as state National Guard members. This action arises under the Constitution and laws of the United States, including First and Fifth Amendments. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361 because of federal questions and deprivation of constitutional rights. This Court has prospective remedial authority via Declaratory Judgment Act, 28 U.S.C. § 2201. In light of the Colorado National Guard's continued pattern of deprivation of its soldiers' Constitutional rights, including intimidation, retaliation, and targeting the careers of its service members, and in response to the irreparable harm done resulting from Defendants' abridgment of Plaintiff's civil rights to Plaintiff's reputation, employment prospects, and emotional wellbeing, Plaintiff seeks compensatory damages to compensate for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life in the amount of no less than $10,000,000 plus applicable attorney's fees.

16.     Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b)(2) for all Defendants, because the entirety of events or omissions giving rise to action occurred in this District.

## PARTIES

### Plaintiff David Morrill

17.     Plaintiff David Morrill is a 42-year-old resident of Arvada, Colorado.

18.     Plaintiff is a graduate of the University of Colorado Denver in Music, currently works in the retail industry and is owner/operator of Protestia Ministries LLC, an online Christian news and commentary publication that is regularly cited by both Christian and secular American news media, including Fox News, the New York Times, and the Christian Post. Plaintiff is a graduate student at Liberty University studying worship music.

19.     Plaintiff serves part-time as a Sergeant First Class in the Colorado Army National Guard. He is currently serving as a professional vocalist, sound technician, and operations sergeant with the 101st Army Band, regularly representing the Colorado National Guard as a public performer. Prior to the complaint about his podcast participation, Plaintiff had, in the words of his former Battalion Commander, an "impeccable" record as a non-commissioned officer.

20.     Plaintiff participated in a religion-focused podcast on March 11, 2022, wherein he expressed political and personal views. Plaintiff was off duty, not on military orders, and not in uniform. Plaintiff's online work and presence do not mention his military affiliation. Plaintiff's speech was protected under the First Amendment, and entirely removed from the military environment and context.

### Defendants

8

21.     Defendant Alyssa Aarhaus is Plaintiff's brigade-level commander at the 89th Troop Command brigade of the Colorado National Guard. She is responsible for deprivations of constitutional rights. She is sued in official capacity.

22.     Defendant Bren Rogers is an assistant adjutant general in the Colorado National Guard. She is responsible for deprivations of constitutional rights. She is sued in official capacity.

23.     Defendant Charles Beatty is the former chief of staff (Army) in the Colorado National Guard. He is responsible for deprivation of constitutional rights. He is sued in official capacity.

24.     Defendant Virginia Usher is a major in the Colorado National Guard. She is responsible for deprivation of constitutional rights. She is sued in official capacity.

25.     Defendant Kelsie McCallum is Plaintiff's commander in the Colorado National Guard. She is responsible for deprivation of constitutional rights. She is sued in official capacity.

26.     Defendant Jason Byrnes is Plaintiff's first-line leader in the Colorado National Guard. He is responsible for deprivation of constitutional rights. He is sued in official capacity.

## STATEMENT OF FACTS

### Online Media Ministry

27.     On March 11, 2022, Plaintiff participated in an online podcast conversation as part of his religious work in Christian news and commentary for Protestia.com. Plaintiff was not on duty, not on military orders, and not in uniform. Plaintiff was asked casually what his rank was, and remarked, "E-7" and that he was in the Army National Guard prior to the intended subject matter of the podcast being discussed. Roughly 30 minutes into the program, the discussion turned to politics, and Plaintiff and co-host opined on current issues including critical

comments about the Vice President, analysis of the George Floyd case, and mockery of self-described "racial trauma counselor" Kyle J. Howard.

**Not on Orders, Not on Duty, Not in Uniform, Not in Breach of Law and Order**

28.    Plaintiff serves part-time as a Sergeant First Class and Operations Non-commissioned Officer with the 101st Army Band of the Colorado National Guard. Plaintiff has served since 2000 and until the non-judicial punishment given by Defendant Aarhaus in December 2022 had a spotless and exemplary service record and was rated as an expert in his field. On March 11, 2022, Plaintiff exercised his First Amendment as a citizen of the United States by expressing his views on religion, politics, and current events. Plaintiff did so while not on military orders, not on duty, not in uniform, and in a non-military context consistent with his ongoing work in religious and political media.

**Investigation into Plaintiff's Speech**

29.    On April 6th, 2022, Defendant Beatty appointed Defendant Usher to investigate Plaintiff's speech in response to a complaint email sent to Colorado National Guard Public Affairs. Despite Plaintiff adding a "personal views" disclaimer in cooperation with Defendant Clellan's September 2021 memo and Plaintiff's speech being entirely removed from any military context, Defendant Usher determined that Plaintiff was in violation of C.R.S. 28-3.1-549 Cognizance of Disreputable Conduct and C.R.S. 28-3.1-512 Contempt Toward Officials because the "nature of the [Plaintiff's] comments "do not align with Army values" and are "derogatory toward the Vice President" and "contemptuous against the President." Defendant Usher demonstrated a negligent disregard for the Constitution's free speech protection and the jurisdictional boundaries of military versus civilian authority and employed an egregiously overbroad legal standard that characterized Plaintiff's exercise of civil liberties as criminal.

Defendant Usher recommended that Plaintiff be forced to censor his video, and either be reduced
in rank or forced to retire. Defendant Beatty notified Plaintiff on August 6th, 2022 that he
intended to impose punishment and gave Plaintiff until September 10th, 2022 to respond.

**Plaintiff's Response**

30.     On September 9th, 2022, Plaintiff submitted a memo to Defendant Beatty
describing First Amendment protections as essential to his online ministry and journalistic work,
reminded Defendant Beatty of the supremacy of the Constitution of the United States over
military code, and demonstrated that Plaintiff's speech manifestly failed the United States Court
of Appeals for the Armed Forces' two-threshold test for allowable military punishment of soldier
speech set forth in *United States v. Wilcox*, 66 M.J. 442 (2008). On the same day, Plaintiff's
military-provided legal representative Major Albana Alla sent a memorandum to Defendant
Beatty motioning to withdraw punishment due to Defendant Beatty's lack of jurisdiction because
Plaintiff was not on a duty status and was therefore not subject to the Colorado Code of Military
Justice. In the memorandum, Major Alla described Defendant Beatty's intent to punish Plaintiff
as a "blatant violation of [Plaintiff's] First Amendment right to freedom of speech and religion."
Notably, Major Alla reminded Defendant Beatty that defendants were engaged in viewpoint
discrimination and that the National Guard had "suffered enough embarrassment in a recent case
involving identical 1st Amendment issues."

**Delayed Judgement and Change of Commander**

31.     Plaintiff and MAJ Alla reported in person to respond to Defendant Beatty's
charges on September 10th, 2022 as requested, but Defendant Beatty declined to meet with
Plaintiff as scheduled despite Plaintiff's representation traveling from out of state. Defendant
Beatty failed to provide an explanation for this declination and failed to reschedule the meeting

11

with Plaintiff. Shortly thereafter, Defendant Aarhaus was promoted to Commander of the 89th

Troop Command Brigade and replaced Defendant Beatty as the charging officer. On December

3rd, 2022, Plaintiff reported to Defendant Aarhaus to respond in person (in addition to the

previously provided written responses provided on September 9th, 2022). Plaintiff repeated his

plea to his constitutional liberties as a citizen, was chastised and shamed by Defendant Aarhaus

for the content of his speech and for not "being a non-commissioned officer 24/7" before being

handed a previously written and printed memo both charging Plaintiff with contempt toward "the

two highest ranking members of our change of command" and insinuating Plaintiff was a racist

who made "deeply violative" remarks "concerning race" and "cannot be relied upon" to support

equal treatment of fellow soldiers. In addition, Defendant Aarhaus demoted Plaintiff one grade,

suspended for 6 months. Despite Plaintiff's lengthy and detailed defense, at no point did

Defendant Aarhaus substantively address Plaintiff's rebuttals, the constitutional defects of the

investigation, or the jurisdictional limitations of military law when soldiers are not on duty.

**Appeal of Punishment**

32.    On December 7th, 2022, Plaintiff appealed Defendant Aarhaus's decision in

accordance with C.R.S. 28-3.1-114.5 to Defendant Rogers, Defendant Aarhaus's next superior

authority and Commander of the Colorado Army National Guard, noting four specific factual

errors in Defendant Aarhaus's Letter of Reprimand and describing the defamatory harm done to

Plaintiff through the issuing of a memorandum smearing Plaintiff as a racist. Plaintiff's appeal

also reminded Defendant Rogers of the overbroad application of Colorado Military Code in

punishing Plaintiff's non-military activity. Despite C.R.S. 28-3.1-114.5 requiring the appeal of a

non-judicial punishment to be "promptly decided," Defendant Rogers took nearly nine months to

decide to reject Plaintiff's appeal to overturn his demotion and remove the defamatory and

damaging Letter of Reprimand. Defendant Rogers failed to explain her decision or address

Defendant Aarhaus's First Amendment violations and other listed defects described in Plaintiff's

appeal.

**Effect of Punishment on Plaintiff's Career Progression**

33.     In January 2023, Defendants McCallum and Byrnes submitted Plaintiff's Non-

commissioned Officer Evaluation Report (NCOER), which rated Plaintiff least qualified among

peers and included language about Plaintiff "experiencing problems with higher-echelon officers

during the rating period." This claim was made despite Plaintiff's active appeal to Defendant

Rogers and Army regulations requiring evaluations to reference only "actions or investigations

that have been processed to completion" (Army Regulation 623-3 3-20.b). Defendant Byrnes

initially determined Plaintiff should be evaluated as having merely "met standard" (indicating

Plaintiff was not performing on par with peers) rather than evaluated consistently with Plaintiff's

history of "exceeded standard" (on par with peers) and "far exceeded standard" (beyond peers)

due to Plaintiff's ongoing proceedings with Defendants Aarhaus and Rogers, yet upon Plaintiff's

appeal to Defendant Byrnes, he reconsidered and determined Plaintiff "exceeded standard" (was

performing on par with peers). However, Defendant Byrnes refused to remove the "ongoing

problems" language, informing Plaintiff that his ongoing appeal for relief pursuant to his

constitutional rights was "harming the unit."

**Ongoing Irreparable Constitutional and Concrete Harms**

34.     Plaintiff has suffered and will continue to suffer continuing concrete harms and

constitutional harms due to the chilling effect of knowing the viewpoint and content of his off-

duty free speech may at any time subject him to targeting, punishment and extraordinary damage

to his reputation and character by Defendants. Plaintiff has also suffered and will continue to

suffer ongoing concrete reputational and emotional harm from the existence of and dissemination

of an official memo from Defendants' labeling Plaintiff as a racist who cannot be trusted to treat

fellow soldiers equally. The irreparable harm done to Plaintiff's reputation, character, mental and

emotional wellbeing, and income potential is a direct result of Defendants' violations of his

constitutional rights.

### FIRST CLAIM FOR RELIEF

### FIRST AMENDMENT – FREEDOM OF SPEECH, PRESS

35.     Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

36.     The First Amendment states that: "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of

speech, or of the press; or the right of the people peaceably to assemble, and to petition the

Government for a redress of grievances." U.S. Const. amend. I. The First Amendment prohibits

federal agencies and officials from restricting freedom of speech, assembly, and press. The First

Amendment applies to state officials and state agencies through the Fourteenth Amendment.

37.     Defendants Beatty, Aarhaus, and Usher violated Plaintiff's rights by applying an

overbroad and fallacious interpretation of C.R.S. 28-3.1-549 *Cognizance of disreputable conduct*

and C.R.S. 28-3.1-512 *Contempt toward officials* to punish the viewpoint and content of

Plaintiff's speech while Plaintiff was not on any orders, not on duty, not in uniform, not in

breach of law and order, and engaged in religious and political journalism on a video podcast

published on March 11, 2022. Defendants Beatty, Aarhaus, and Usher violated Plaintiff's rights

by frivolously investigating, officially reprimanding, and subjectively and punitively applying

the Army's workplace Equal Opportunity policies and "Army Values" motto to restrict the

viewpoint and content of Plaintiff's speech while Plaintiff was not on any orders, not on duty,

not in uniform, not in breach of law and order, and engaged in religious and political journalism on a video podcast published on March 11, 2022. The actions of Defendants Beatty, Aarhaus, and Usher, have deprived and caused Plaintiff to be deprived of his First Amendment rights to freedom of speech and press, and can reasonably be expected to chill a reasonable person from engaging in activity constitutionally protected by the First Amendment.

38.     Defendants Beatty, Aarhaus, and Usher acted with reckless or callous indifference to the First Amendment rights of Plaintiff. Defendant Rogers refused to correct these constitutional violations, offering no explanation for her decision nor substantive response to Plaintiff's appeal.

39.     Defendants McCallum and Byrnes have submitted derogatory and unsubstantiated information within Plaintiff's career evaluation in response to Plaintiff's defense of his First Amendment rights. Thus, Defendants have deprived and caused Plaintiff to be deprived of his First Amendment rights to freedom of speech and press, with ongoing chilling effect on Plaintiff's religious journalism. The actions of Defendants McCallum and Byrnes can reasonably be expected to chill a reasonable person from engaging in activity constitutionally protected by the First Amendment.

40.     There is little to no case law dealing with military officials acting against reserve component service members for the exercise of constitutional liberties while not on military duty and while entirely removed from any military context. Yet the similar case of *Kennedy v. Paul*, Civil Action 21-cv-772-WJM-MEH (D. Colo. Aug. 8, 2022) was recently adjudicated by this court, and involved many of the same defendants. In the court's recently vacated dismissal of Kennedy's claims as moot considering his military record being corrected and his transfer to the Virginia Army Reserves, this court took as true Kennedy's allegations that Personnel Actions

were taken by the National Guard Defendants in retaliation for the content of Kennedy's political speech. Similarly, Plaintiff has been retaliated against by Defendants for exercising his First Amendment rights in the form of non-judicial punishment, derogatory claims in official evaluations, and a Letter of Reprimand smearing him as a racist falsely and without evidence. The same retaliatory, discriminatory motivation noted in *Kennedy* is made clear in the investigation of Plaintiff's off-duty speech, as Defendant Usher makes clear in the official investigation that it is the content of Plaintiff's speech rather than the context that is the reason for punishment, and Defendant Aarhaus reiterates the viewpoint discriminating motive in her Letter of Reprimand. The National Guard Bureau provided a memorandum on July 26, 2021 clarifying that the jurisdiction and authority claimed by the *Kennedy* defendants to restrict his speech via DoDI 1326.06 did not apply to soldiers not on a duty status. Similarly, C.R.S. 28-3.1-105 states, "(1 )This code applies to all persons otherwise subject to this code, either in title 32 of the United States Code, as amended, or state active duty status, while they are serving outside the state and while they are going to and returning from such service outside the state in the same manner and to the same extent as if they were serving inside the state." C.R.S. 28-3-101 (13) defines "on duty" as follows, "On duty' includes periods of drill and such other training and service as may be required under state or federal law, or orders." Defendants' actions in punishing Plaintiff despite clear and enumerated lack of jurisdiction in both *Kennedy* and this case demonstrates a callous disregard for both the First Amendment and the applicability of the Colorado Military Code.

41.    All citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 24 (1971). "It has long been clearly established that the First Amendment bars retaliation for protected speech and association." *Buck v. City of Albuquerque*,

549 F.3d 1269, 1292 (10th Cir. 2008) (*quoting Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 848 (10th Cir. 2005)). Under ordinary constitutional analysis, the Tenth Circuit examines First Amendment retaliation claims under *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), inquiring whether (1) Plaintiff was engaged in constitutionally protected activity; (2) Defendants caused Plaintiff to suffer injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendant's actions were motivated by the protected activity. *Id.*

42.    Here, Plaintiff peacefully engaged in constitutionally protected activity through voicing his political and religious views when not on orders, not on duty, and not in uniform. Defendants' judicial application of their subjective, content-discriminating preferences for speech as well as overbroad and jurisdictionally violative application of Colorado Military Code caused and continues to cause concrete, irreparable injury sufficient to chill a person of ordinary firmness from continuing to engage in ordinary, protected speech. Defendants caused Plaintiff to fear further retaliation from continuing to engage in religious and political journalism. Plaintiff's legitimate and credible retaliation fears are silencing his political speech—the speech most highly valued by the First Amendment.

43.    The Supreme Court has made clear that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Heideman v. South Salt Lake City, 348 F.3d 1182, 1190 (10th Cir. 2003) (quoting Elrod v. Burns, 427 U.S. at 373. Defendant Aarhaus's statement that Plaintiff "made recorded statements in direct contradiction to…Military Equal Opportunity Policy" despite her lack of jurisdiction and subjective opinion of Plaintiff's speech makes it clear that Defendants are willing to continue chilling and denying Plaintiff's freedoms of speech and press. Defendants' actions and

statements likewise demonstrate a willingness to similarly and irreparably harm subordinates for the exercise of disfavored political or religious views.

44.     The Tenth Circuit recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights," *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013); *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). The Tenth Circuit particularly recognized a "strong public interest in protecting First Amendment values." *Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983). The Department of Defense likewise instructs in DoDI 1325.06: "A Service member's right of expression should be preserved to the maximum extent possible." Defendants have also ignored, in their ongoing deprivation of Plaintiff's First Amendment rights, Enclosure 1, paragraph (e): "The First Amendment to the Constitution of the United States."

45.     This Court set forth the standard for jurisdiction, review, and remedies available for deprivations of constitutional rights in *Saum v. Widnall*, 912 F.Supp. 1384 (D. Colo. 1996). In a case involving constitutional claims brought against members of the military in their official capacities for declaratory and injunctive relief by an active-duty U.S. Air Force Academy cadet, this Court found subject matter jurisdiction where "claims arise under federal law." *Id*. at 1390. This Court, citing the Tenth Circuit's adoption, in *Lindenau v. Alexander*, 663 F.2d 68, 71 (10th Cir. 1981), of the two-part test for reviewability articulated in *Mindes v. Seaman*, 453 F.2d 197, 201-202 (5th Cir. 1971), then found the constitutional claims reviewable, opining that "civilian courts may review military matters when substantial constitutional rights are in jeopardy." *Saum v. Widnall*, 912 F.Supp. at 1391. This Court noted "exhaustion requirement should not, and does not appear to, apply to constitutional claims." *Id*. at 1391 n.7. *See also Lindenau*, 663 F.2d at 72 (first part of test met; review denied because claims "were not strong"). Shifting to the second

part of the *Mindes* test, this Court found potential injury to the active-duty cadet passed the test

because "Defendants' allegedly unconstitutional conduct would go unchecked and Saum would

be unable to seek vindication of her civil rights," and any deference due does not bar review of

violations of "fundamental constitutional rights." *Saum v. Widnall*, 912 F.Supp. at 1392. "There

is no 'military exception' to the Constitution," and deference to military on constitutional claims

occurs using "ordinary constitutional analysis." *Id.* at 1392 (*citing Steffan v. Aspin*, 8 F.3d 57, 62

(D.C. Cir. 1993). This Court distinguished the claims from Bivens causes of action for damages.

*Saum v. Widnall*, 912 F.Supp. at 1392 n. 8. This Court properly applied ordinary constitutional

analysis in weighing nature and strength of constitutional claims, applying close judicial scrutiny

to plaintiff's sex discrimination claims. *See Frontiero v. Richardson*, 411 U.S. 677, 682 (1973).

Ultimately, this Court found the claims reviewable "to the extent the equitable relief sought is in

a form other than a monetary award." *Saum v. Widnall*, 912 F.Supp. at 1395. This Court's only

hesitation was in granting declaratory relief where "plaintiff seeks no prospective relief" and did

not allege that "deprivations are ongoing or that she faces a threat of being harmed by them in

the future." *Saum v. Widnall*, 912 F.Supp. at 1394. In this case, plaintiff seeks prospective relief,

deprivations are ongoing, continues to face threats of future harm, and the injury is irreparable.

The Tenth Circuit has also affirmed prospective relief for constitutional claims, brought pursuant

to 42 U.S.C. § 1983, against National Guard commanders in named official capacities, was not

barred by the Eleventh Amendment. *Nelson v. Geringer*, 295 F.3d 1082, 1099 (10th Cir. 2002).

*Saum v. Widnall* and *Nelson v. Geringer*, both precedential constitutional cases, control here,

where Plaintiff seeks prospective relief for deprivations of fundamental constitutional rights.

      46.     Defendants' constitutional violations cause ongoing harm to Plaintiff.

## SECOND CLAIM FOR RELIEF

## DECLARATORY RELIEF

47.      Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

48.      The above allegations and claims constitute an actual case and controversy between Plaintiff and Defendants, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, thus authorizes the Court to enter declaratory relief against the Defendants on the above claims.

49.      Plaintiff is entitled to a Declaratory Judgment that Defendants, by targeting Plaintiff's exercise of freedom of speech and press due to Plaintiff's viewpoint and content, specifically Plaintiff's off-duty participation in religious journalism, violated the U.S. Constitution and laws, and continue to violate Plaintiff's constitutional rights as stated above.

50.      Alternatively, should this Court find Declaratory Judgments to be insufficiently prospective, this Court should treat this constitutional claim as action in the nature of mandamus under 28 U.S.C. § 1361. *See, e.g., Saum v. Widnall*, 912 F.Supp. 1384, 1395 (D. Colo. 1996).

51. Defendants' constitutional violations cause ongoing harm to Plaintiff.

## THIRD CLAIM FOR RELIEF

### COMPENSATORY AND EXEMPLARY DAMAGES

52.      Plaintiff hereby incorporates and adopts all other paragraphs of this Complaint.

53.      Defendant Aarhaus negligently and maliciously published defamatory statements of fact about Plaintiff, a soldier under her command, in an official memorandum. These false statements include:

    a.      Plaintiff's off-duty speech was in direct contradiction to Military Equal Opportunity Policy.

    b.      Plaintiff displayed "a deep contempt and disrespect for the two highest ranking members of our chain of command."

c.    Plaintiff made "remarks concerning race" that were "deeply violative" of
Army Equal Opportunity Policy and therefore disagree with the policy and
cannot be relied upon to support it.

54.    Plaintiff has suffered and will continue to suffer substantial injury as a result of
Defendants' defamatory statements published in an official memorandum and made available to
Plaintiff's chain of command and other soldiers. These injuries include but are not limited to
injury to reputation and character, mental anguish, damage to future military career prospects,
and loss of future income and earning capacity.

55.    Despite Plaintiff's statement that George Floyd's killing was not a result of racial
targeting – a view publicly shared by Derek Chauvin prosecutor Keith Ellison who declined to
charge Chauvin with a hate crime – Defendant Aarhaus callously implied Plaintiff is a racist by
stating Plaintiff's "remarks on race" show he does not support Army Equal Opportunity Policy.
Likewise, Defendant Aarhaus's identification of Kyle Howard's mixed ethnicity despite Plaintiff
not mentioning Howard's ethnicity implies that Plaintiff targeted Howard on the basis of his
race, bolstering the defamatory and damaging charge of racism.

56.    Defendant Rogers was informed of these deficiencies via Plaintiff's appeal of
Defendant Aarhaus's punishment. Defendant Rogers allowed Plaintiff to be labeled as a racist by
a senior commander for over nine months, substantially increasing the emotional and mental
distress on Plaintiff and Plaintiff's family, before denying Plaintiff's appeal with no explanation.
Plaintiff Rogers refusal to correct the defamatory statements against a soldier under her
command and callous lack of consideration of the obvious factual deficiencies within the
defamatory Letter of Reprimand demonstrate a willingness to inflict reputational and emotional
harm upon a subordinate soldier, soldier's family, and fellow soldiers under her command.

57.     Defendants McCallum and Byrnes referenced "problems with higher-echelon officers during rating period" within Plaintiff's official service evaluation and indicated that Plaintiff was least qualified among peers. This was after Defendant Byrnes informed Plaintiff that his defense of First Amendment rights via the ongoing NJP appeal was "damaging the unit." Despite Plaintiff's objections to the unfounded and derogatory claims in his evaluation, Defendant Byrnes and McCallum submitted the evaluation to Plaintiff's permanent record prior to the conclusion of the NJP appeal, causing and continuing to cause Plaintiff ongoing reputational, career, and emotional damage.

58.     Former US Labor Secretary Raymond J. Donovan notably asked after being acquitted of fraud, "Which office do I go to to get my reputation back?" Similarly, Plaintiff's reputation, character, mental and emotional wellbeing, and income earning potential have been irreparably damaged and continue to be damaged by Defendants' violation of his constitutional rights and the malicious and outrageous smearing of him as a racist who acted in violation of Equal Opportunity – an unfalsifiable accusation made exponentially more damaging when coming from Plaintiff's military chain of command. The Supreme Court has held that 42 U.S.C. § 1983 creates "a species of tort liability" (*Imbler v. Pachtman,* 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 [1976]) when government officials violate constitutional rights, and the Defendants' fallacious determination that Plaintiff's civilian speech demonstrates that he is an untrustworthy racist is both the cause of ongoing, significant harm to Plaintiff and the stated motive for Defendants' constitutionally violative actions. The Defendants' violation of Plaintiff's free speech rights by way of an officially published accusation of racism is the proximate cause of the irreparable and ongoing damages done to Plaintiff.

59.     On February 19, 2021, Defense Secretary Lloyd Austin released a video
announcing a "stand down" to address extremism in the military ranks
(https://www.defense.gov/News/News-Stories/Article/Article/2509632/a-message-from-the-
secretary-of-defense-on-extremism/), following his confirmation hearing on January 22, 2021
where he outlined the military's goal of rooting out racism and extremism, which he described as
"enemies…within our own ranks." Secretary Austin did not outline specific words or behavior
constituting extremism, yet his video displayed the military oath to support and defend the
Constitution, including presumably the First Amendment right to free expression. In light of the
military's current, stated goal of rooting out racism and extremism, the grievous harm caused by
Defendants acting outside their legal jurisdiction to punish the content of a subordinate's civilian
speech and falsely label him as a racist cannot be overstated.

60.     Plaintiff respectfully requests the following damages to be considered separately
and individually for the purpose of determining the sum of money that will fairly and reasonably
compensate him for the damage caused by Defendants' violations of his constitutional rights:

      a.     The loss of reputation and character Plaintiff has suffered in the past and
will continue to suffer in the future;

      b.     The mental anguish Plaintiff has suffered in the past and will continue to
suffer in the future; and

      c.     The loss of any earnings sustained by Plaintiff in the past, and the loss or
reduction of Plaintiffs earning capacity in the future.

61.     Defendants' conduct not only demonstrates a callous disregard for the principles
of the First Amendment of the Constitution of the United States, and – considering the numerous
explanations of the law offered in Plaintiff's intra-military appeals – a willful, systemic,

organization-level dereliction of duty to uphold the constitutional oath all servicemembers swear. Defendants' conduct is additionally and egregiously offensive considering how recently the Colorado National Guard and many of the *exact same defendants* saw their punitive actions against CPT Alan Kennedy reversed by higher military review and a National Guard Bureau memorandum clarifying an *on-duty* jurisdictional requirement – facts Plaintiff offered multiple times to Defendants in various intra-organizational appeals. Defendants' conduct demonstrates that even direct rebuttal of their constitutionally violative actions will not deter similar harm being done to subordinates in the future, and that future potential harm to subordinates can reasonably be expected to occur at a broad organizational level. Defendants' statements represent defamation per se as Defendants' false accusation of legally-violative racism represents obvious harm to Plaintiff. Defendants' malicious, reckless, defamatory statements can reasonably be expected to have caused and continue to cause incalculable damage to Plaintiff, therefore Defendants are liable for exemplary/punitive damages.

62. The maximum amount of damages sought by Plaintiff, at this time, will be $10,000,000.00.

63. Defendants' constitutional violations cause ongoing harm to Plaintiff.

## PRAYER

WHEREFORE, Plaintiff prays that this Court grant the following relief:

64. A declaration that Defendants Aarhaus, Beatty, Usher, and Rogers violated Plaintiff's substantial constitutional rights when they investigated Plaintiff's free speech exercised while not on orders, not on duty, not in uniform, and not in breach of law and order, applied Colorado Military Code both without statutory jurisdiction and in an overbroad and

subjective manner, and applied Army Equal Opportunity Policy and the "Army Values" motto as a vehicle to censor and punish the content, viewpoint, and beliefs of Plaintiff;

65.    A declaration that Defendants McCallum and Byrnes violated Plaintiff's substantial constitutional rights when they submitted derogatory and subjective information in Planitiff's official military evaluation in direct response to Plaintiff's defense of his First Amendment rights;

66.    A declaration that Defendant Aarhaus defamed, inflicted intentional emotional distress, and continues to inflict intentional emotional distress on Plaintiff through the publishing of an official memorandum containing false and misleading statements characterizing Plaintiff as a racist;

67.    A declaration that Defendant Rogers inflicted intentional emotional distress and continue to inflict intentional emotional distress on Plaintiff by her refusal to examine on the merits and grant Plaintiff's appeal of Defendant Aarhaus's defamatory Letter of Reprimand memorandum in response to Plaintiff's demonstration of clear, injurious falsehoods contained within;

68.    A preliminary and permanent injunction, in the nature of mandamus, enjoining Defendants from taking adverse action or withholding favorable action against Plaintiff based in whole or in part on the exercise of his First Amendment rights while not on orders, not on duty, not in uniform, and not in breach of law and order, and mandating Defendants remove the Letter of Reprimand memorandum and evaluation;

69.    A finding that Defendant's actions have caused and continue to cause irreparable harm to Plaintiff's reputation, character, emotional and mental health, current and future income

earning potential, and that restitution for previous and ongoing harm shall be made in an amount

not less than $10,000,000.00 and any additional damages the Court deems prudent;

70.    An award of reasonable attorneys' fees and costs as allowed by law; and

71.    Further declaratory and injunctive relief that this Court deems just and proper.

Dated: January 23, 2024

By: _____

David J. Morrill, SFC, Colorado National Guard
7232 Braun Ct
Arvada, CO 80005
Phone: (720) 318-8967
david.j.morrill.mil@army.mil