IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-00199-PAB-KAS

DAVID MORRILL,

    Plaintiff,

v.

ALYSSA AARHAUS, 89th Troop Command Commander, Colorado National Guard,
BREN ROGERS, Former Chief of Staff (Army), Colorado National Guard; in his official capacity,
CHARLES BEATTY, Former Chief of Staff (Army), Colorado National Guard; in his official capacity,
VIRGINIA USHER, Investigating Officer, Colorado National Guard; in her official capacity,
KELSIE MCCALLUM, 101st Army Band Commander, Colorado National Guard; in her official capacity, and
JASON BYRNES, 101st Army Band First Sergeant, Colorado National Guard; in his official capacity,

    Defendants.

---

## ORDER

---

This matter comes before the Court on the Recommendation of the United States Magistrate Judge [Docket No. 59] and Plaintiff's Motion to Correct Objection to Court's Recommendation [Docket No. 61]. The Recommendation addresses Defendants' Motion to Dismiss Amended Complaint [Docket No. 41] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On December 9, 2024, plaintiff filed an objection. Docket No. 60. On December 23, 2024, defendants filed a response to plaintiff's objection. Docket No. 62. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.   BACKGROUND[1]

Plaintiff serves part-time as a sergeant first class and operations sergeant in the

Colorado National Guard.  Docket No. 32 at 2, ¶ 3.  On March 11, 2022, plaintiff

"participated in an online video discussion as part of his religious ministry activity,

discussing controversial issues from a conservative Christian perspective including

politics, current events, and religious news."  *Id.*  Plaintiff "expressed his political and

religious views in a personal capacity."  *Id.*  Plaintiff "expressed the opinion that George

Floyd was not targeted by the police based on race," "expressed a negative and

insulting opinion about Kamala Harris," and "mocked the speech patterns of a public

figure, theological opponent and internet personality, Kyle J. Howard."  *Id.* at 3, ¶ 3.

Plaintiff stated that Vice President Harris "supposedly speaks for a living, and she's a

US Senator.  And she's . . . she's . . . it's like she's trying to be dumber than Joe Biden."

Docket No. 32-2 at 1.  In response to "an unprompted question concerning his status in

the military," plaintiff "confirmed that he was an 'E-7' in the National Guard."  Docket

No. 32 at 2-3, ¶ 3.  The video discussion is posted on YouTube.  Docket No. 32-2 at 1.

On March 16, 2022, plaintiff's "unit commander" informed plaintiff that the "video

in question" was "required to include a disclaimer informing viewers that [the] views did

not reflect those of the Army or Colorado National Guard."  Docket No. 32 at 3, ¶ 5.

Plaintiff explained to his unit commander that the Colorado National Guard's instruction

---

[1] The Court assumes that the well-pled allegations in plaintiff's amended
complaint are true in considering the motion to dismiss.  *Brown v. Montoya*, 662 F.3d
1152, 1162 (10th Cir. 2011).

to add the disclaimer was "invalid as it did not properly apply cited regulations."  *Id.*
However, plaintiff did add "the requested verbiage to the video's description to
accommodate [ ] the request."  *Id.*

On April 6, 2022, defendant Colonel Charles Beatty, former Colorado National
Guard Chief of Staff (Army), appointed defendant Major Virginia Usher to "officially
investigate Plaintiff's video statements."  *Id.*, ¶ 6.  Despite plaintiff's disclaimer,
defendant Usher's investigation "concluded that Plaintiff's remarks about George Floyd
violated C.R.S. 28-3.1-549 *Cognizance of Disreputable Conduct* because 'the nature of
the comments do not align with Army values.'"  *Id.* at 3-4, ¶ 6.  Defendant Usher
determined that plaintiff's comments "about Kamala Harris were 'derogatory' and
violated *Cognizance of Disreputable Conduct* (despite the Vice President not being a
member of the military chain of command)."  *Id.* at 4, ¶ 6.  Defendant Usher determined
that plaintiff was "contemptuous towards the President of the United States (despite no
qualitative statement being made about the President)."  *Id.*  Defendant Usher
determined that plaintiff "violated *Cognizance* by mocking the way Kyle J. Howard
speaks, noting that Howard was reported to be a person of mixed ethnicity – despite
this fact never being mentioned by Plaintiff in the video."  *Id.*

On August 6, 2022, defendant Colonel Beatty, plaintiff's "brigade commander,"
notified plaintiff that defendant Beatty intended to "punish" plaintiff under "Article 28-3.1-
114 (Non-judicial punishment, NJP) of the Colorado Code of Military Justice for violation
of C.R.S. 28-3.1-549 *Cognizance of Disreputable Conduct* and C.R.S. 28-3.1-512
Contempt Toward Officials."  *Id.*, ¶ 7.  Defendant Beatty gave plaintiff "three duty days
to respond," which fell on September 10, 2022.  *Id.*  On September 9, 2022, plaintiff

responded, providing "an eight-page memo defending his conduct . . . , citing his
impeccable service record, describing the necessity of his First Amendment rights . . . ,
and provided a lengthy explanation of the military and legal application of the statutes."
*Id.*, ¶ 8.

Defendant Colonel Alyssa Aarhaus replaced defendant Beatty as "Commander
of 89th Troop Command Brigade."  *Id.* at 5, ¶ 9.  On December 3, 2022, defendant
Aarhaus "executed the [Non-Judicial Punishment] against Plaintiff, demoting him from
Sergeant First Class to Staff Sergeant with a six-month suspension of the punishment
contingent on Plaintiff committing no further infractions."  *Id.*, ¶ 10.  Defendant Aarhaus
issued a letter of reprimand that "cast Plaintiff's off-duty expression as violating Army
Equal Opportunity (EO) regulations due to his 'remarks concerning race'" and
"defam[ed] Plaintiff as a racist with no explanation nor evidence."  *Id.*  Plaintiff appealed
the decision.  *Id.*  Plaintiff understood that "the existence of an official memorandum
smearing him as a racist would grievously harm his long and decorated military career
and reputation, implicate his service evaluations, and potentially affect the Qualitative
Retention Board (QRB) deciding whether to allow him to continue to serve."  *Id.*  The
"continued existence of a memorandum defaming Plaintiff as a racist presented serious
mental and emotional distress, similar distress for Plaintiff's family and coworkers, and
continuing damage to Plaintiff's career prospects and income earning potential."  *Id.*  On
December 7, 2022, Colorado National Guard Attorney Advisor Captain Nicholas
Hancock responded to an email from Major Albana Alla of the National Guard Trial
Defense, who represented plaintiff, *id.* at 4, ¶ 8, stating that the letter of reprimand

"'could be attached to the NJP paperwork and submitted to [Plaintiff's permanent record] along with the rest of the NJP paperwork." *Id.* at 5-6, ¶ 11.

On January 6, 2023, defendant Commander Kelsie McCallum, plaintiff's commander, and defendant First Sergeant Jason Byrnes, plaintiff's immediate supervisor, "submitted a service evaluation . . . for Plaintiff which remarked that Plaintiff 'experienced problems with higher-echelon officers during the rating period' and rated Plaintiff least qualified and last versus other equally ranked soldiers." *Id.* at 6, ¶ 12. On May 5, 2023, "the evaluation was placed into Plaintiff's permanent record." *Id.*

On September 7, 2023, defendant Assistant Adjunct General Bren Rogers, plaintiff's "first-line leader," *id.* at 10, ¶ 27, denied plaintiff's appeal of the Non-Judicial Punishment. *Id.* at 6, ¶ 13. General Rogers "failed to provide a response for nearly nine months after the appeal was filed," "[d]espite CRS 23.3-1-114.5 requiring the appeal to be 'promptly decided.'" *Id.*

## II.    LEGAL STANDARD

### A.    <u>Objections to Magistrate Judge Recommendations</u>

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927

F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something less than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).  Because plaintiff is proceeding pro se, the Court will construe his objections and pleadings liberally without serving as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. Motion to Dismiss

A motion under Rule 12(b)(1) is a request for the Court to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A plaintiff bears the burden of establishing that the Court has jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1).  *See Jackson v. City and Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012). Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004)

6

(quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). "In reviewing a

factual attack, a court has wide discretion to allow affidavits, other documents, and a

limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado*

*Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (internal quotations and

citation omitted).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a complaint must allege enough factual matter that, taken as true, makes

the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "The 'plausibility' standard requires that relief must plausibly follow from the

facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken*

*Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534

F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the

statement need only 'give the defendant fair notice of what the claim is and the grounds

upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting

*Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide

"supporting factual averments" with his allegations. *Cory v. Allstate Insurance*, 584 F.3d

1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual

averments are insufficient to state a claim on which relief can be based." (citation

omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v.*

*Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not shown – that

the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations

and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his]

claims across the line from conceivable to plausible in order to survive a motion to

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so

general that they encompass a wide swath of conduct, much of it innocent," then

plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).

Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still

must contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at

1286 (alterations omitted).

## III.    ANALYSIS

Plaintiff's amended complaint asserts a claim under the First Amendment of the

United States Constitution, claiming that defendants' conduct in response to the March

11, 2022 video violated plaintiff's First Amendment rights.[2]  Docket No. 32 at 14-20.  He

claims that he has "been retaliated against by Defendants for exercising his First

---

[2] Plaintiff's first claim is titled "First Amendment – Freedom of Speech, Press."
Docket No. 32 at 14.  It is unclear by which theory plaintiff argues that his First
Amendment rights were violated.  For example, he states that defendants' conduct
restricted the "viewpoint and content of Plaintiff's speech," *id.* at 15, ¶ 38, and was a
"judicial enforcement of subjective, content-discrimination preferences for speech."  *Id.*
at 18, ¶ 43.  He claims that defendants' conduct was an "overbroad, fallacious, and
extrajudicial application" of Colo. Rev. Stat. §§ 28-3.1-549 and 28-3.1-512, *id.* at 15,
¶ 38, and was an "overbroad and jurisdictionally violative application of Colorado
Military Code."  *Id.* 18, ¶ 43.  However, it appears that his allegations primarily address a
theory of retaliation.  For instance, he relies on the Tenth Circuit's standard for pleading
a First Amendment retaliation claim.  *Id.* at 17, ¶ 42.  Plaintiff further alleges that
defendants retaliated against him for exercising his First Amendment rights, resulting in
a chilling effect.  *See, e.g.*, *id.* at 15-17, ¶¶ 38, 40, 41, 43.  Because the magistrate
judge does not reach, and the Court does not reach, the merits of plaintiff's claims, the
Court will not distinguish the nature of plaintiff's First Amendment claim at this time.

Amendment rights in the form of non-judicial punishment, derogatory claims in official evaluations, and a Letter of Reprimand smearing him as a racist falsely and without evidence."  *Id.* at 16, ¶ 41.

Plaintiff argues that he is "entitled to a Declaratory Judgment that Defendants, by extrajudicially targeting Plaintiff's exercise of freedom of speech and press due to Plaintiff's viewpoint and content . . . violated the U.S. Constitution and laws, and continue to violate Plaintiff's constitutional rights."  *Id.* at 21, ¶ 50.  He seeks compensatory and exemplary damages for the "loss of reputation and character Plaintiff has suffered in the past and will continue to suffer in the future," the "mental anguish Plaintiff has suffered in the past and will continue to suffer in the future," and the "loss of any earning sustained by Plaintiff in the past, and the loss or reduction of Plaintiffs [sic] earning capacity in the future."  *Id.* at 24, ¶ 61.

Furthermore, plaintiff requests injunctive relief.  *Id.* at 27, ¶ 70.  He requests that defendants be enjoined from "taking adverse action or withholding favorable action against Plaintiff based in whole or in part on the exercise of his First Amendment rights while not on order, not on duty, not in uniform, and not in breach of law and order."  *Id.* He requests that "Defendants remove the Letter of Reprimand (LOR) memorandum via a written declaration countermanding the content of the LOR."  *Id.*

### A.  <u>**Motion to Dismiss**</u>

The magistrate judge recommends that plaintiff's claim be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because plaintiff seeks retrospective relief and compensatory damages against state officers in their official capacity that are barred under the Eleventh Amendment and because he lacks Article III standing to pursue prospective

relief.  Docket No. 59 at 8-9.  Because the magistrate judge found that the Court lacks

subject matter jurisdiction, she did not address whether plaintiff's claims are barred by

*Feres v. United States*, 340 U.S. 135, 146 (1950), or *Lindenau v. Alexander,* 663 F.2d

68 (10th Cir. 1981), or consider defendants' arguments pursuant to Fed. R. Civ. P.

12(b)(6).  *Id.*

Plaintiff makes two objections: (1) his claim is not barred by Eleventh

Amendment sovereign immunity because the "state of Colorado is not the primary

funder of the Colorado National Guard, and therefore is not the real party of interest in

terms of granting Eleventh Amendment immunity," Docket No. 60 at 4; and (2) he has

Article III standing to pursue his claim because his "standing is based not merely on

past behavior, but on multiple ongoing factors" that include "continuing harm, the

mechanism by which derogatory evaluations comments affect military career prospects,

the continuation of identical circumstances that brought about past harm, and no

evidence contradicting the reasonableness of recurrence of harmful behavior by

Defendants apart from voluntary cessation."  *Id.* at 4-5.

### 1.  Objection One

The magistrate judge found that, because plaintiff has filed suit against the

defendants, who are Colorado National Guard officers, in their official capacities for

compensatory damages and retrospective relief, Eleventh Amendment immunity

applies.  Docket No. 59 at 10.  The magistrate judge explained that "the Tenth Circuit

has held that a State's National Guard is an 'arm of the state' that is entitled to Eleventh

Amendment immunity."  *Id.* (citing *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th

Cir. 1983)).  The recommendation found that it "need not credit Plaintiff's assertions that

10

the Eleventh Amendment does not apply to the CO National Guard and that the CO

National Guard is a federal, rather than state, entity." *Id.* at 11.

"[A]n assertion of Eleventh Amendment immunity concerns the subject matter

jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir.

2002). "Only a state or 'arms' of a state may assert the Eleventh Amendment as a

defense to suit in federal court." *Sutton v. Utah State School for the Deaf & Blind*, 173

F.3d 1226, 1232 (10th Cir. 1999). In determining whether a political subdivision

constitutes an "arm of the state," courts consider five factors: (1) the characterization of

the governmental unit under state law; (2) the guidance and control exercised by the

state over the governmental unit; (3) the funding that the governmental unit receives

from the state; (4) the governmental unit's ability to issue bonds and levy taxes on its

own behalf; and (5) the state's legal liability to pay a judgment against the governmental

unit. *Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). The Tenth Circuit has

alternatively framed the four factors as a two-part inquiry: "The court first examines the

degree of autonomy given to the agency, as determined by the characterization of the

agency by state law and the extent of guidance and control exercised by the state.

Second, the court examines the extent of financing the agency receives independent of

the state treasury and its ability to provide for its own financing." *Duke v. Grady Mun.*

*Sch.*, 127 F.3d 972, 974 (10th Cir. 1997) (internal quotation marks and brackets

omitted).

"The question of whether state officials violated federal law . . . affects both the

initial immunity inquiry and the court's ultimate decision on the merits. *Lewis v. New*

*Mexico Dep't of Health,* 261 F.3d 970, 976 (10th Cir. 2001). However, "[a]t the immunity

stage . . . federal courts apply the limited jurisdictional standard used to assess whether

a claim sufficiently confers subject matter jurisdiction, asking only whether the claim is

wholly insubstantial and frivolous, rather than reaching the legal merits of the claim." *Id*.

(internal quotation omitted).

Applying the two-part inquiry from *Duke*, the Tenth Circuit held in *Hefley* that the

Kansas National Guard was an arm of the state that was entitled to Eleventh

Amendment immunity. *Hefley*, 713 F.2d at 1493. *Hefley* relied on the fact that "the

State of Kansas exercises significant authority" over the Kansas National Guard and the

Kansas National Guard has "no independent taxing power," such that "judgment against

it apparently would be satisfied from state funds." *Id.*

Here, the magistrate judge found that *Hefley* applies, such that defendants sued

in their official capacities are entitled to Eleventh Amendment immunity where plaintiff

seeks compensatory damages and retrospective relief. Docket No. 59 at 10. Plaintiff's

objection that the "state of Colorado is not the primary funder of the Colorado National

Guard, and therefore is not the real party of interest in terms of granting Eleventh

Amendment immunity," Docket No. 60 at 4, is without support. The fact that the

Colorado National Guard is governed by a scheme of "federal authorization" does not

defeat sovereign immunity. *See Knutson v. Wis. Air Nat'l Guard,* 995 F.2d 765, 768

(7th Cir. 1993) (holding that "the fact that Wisconsin adopts and [the Wisconsin National

Guard] opts to utilize federal substantive and procedural rules in the exercise of its

authority does not alter the state-law character of its actions" and it being governed by a

scheme of "federal authorization" "does not alter the state-law character of its actions").

The Court finds that the Colorado National Guard is an arm of the state. "In each state the National Guard is a state agency, under state authority and control." *Id.* at 767. The State of Colorado exercises significant control over the Colorado National Guard. For instance, the governor appoints the adjutant general and acts as the commander in chief. Colo. Rev. Stat. §§ 28-3-104, 28-3-105. The governor has the authority to order the Colorado National Guard into active service of the state under certain conditions. *Id.* Further, judgment against the Colorado National Guard would be satisfied from state funds. *See Hefley,* 713 F.2d at 1493. Because the Colorado National Guard is an arm of the state, plaintiff's claim against Colorado National Guard officers, sued in their official capacity, are entitled to Eleventh Amendment immunity where plaintiff seeks relief in the form of compensatory damages and retrospective declaratory relief.

The magistrate judge noted that the exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908), "only applies to prospective injunctive relief." Docket No. 59 at 10. The Court finds that plaintiff seeks prospective injunctive relief. *See* Docket No. 32 at 27, ¶ 70. Accordingly, the Court will determine whether plaintiff can seek relief under this exception.

Pursuant to *Ex parte Young*, a defendant is not entitled to Eleventh Amendment immunity where a plaintiff "bring[s] suit against individual state officers acting in their official capacities" and "the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). To determine whether this exception to Eleventh Amendment immunity applies, a court "need only conduct a straightforward inquiry into whether the

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 1167 (citation omitted).  In other words, the plaintiff must allege an ongoing violation of federal law that can be remedied by prospective, injunctive relief for *Ex parte Young* to apply.  *Hakeem v. Kansas Dep't of Hum. Servs., Child Support Enf't Div.*, 2022 WL 16642268, at *5 (10th Cir. Nov. 3, 2022).

Plaintiff identifies three past instances of defendants' conduct that allegedly infringed on his First Amendment rights: the letter of reprimand, evaluation report, and Non-Judicial Punishment.  Docket No. 32 at 16, ¶ 41.  Plaintiff seeks to enjoin defendants from "taking adverse action or withholding favorable action against Plaintiff based in whole or in part on the exercise of his First Amendment rights while not on orders, not on duty, not in uniform, and not in breach of law and order." *Id.* at 27, ¶ 70. He also requests that "Defendants remove the Letter of Reprimand (LOR) memorandum via a written declaration countermanding the content of the LOR." *Id.* Plaintiff seeks declaratory relief that defendants "continue to violate Plaintiff's constitutional rights."[3] *Id.* at 21, ¶ 50.

As an initial matter, the declaratory relief that plaintiff seeks is not available under *Ex parte Young*.  A declaration that defendants "continue to violate" plaintiff's "constitutional rights" does not specify defendants' conduct that is infringing on plaintiff's rights and that the declaration seeks to remedy.  *Cf. Est. of Schultz v. Brown*, 846 F. App'x 689, 692 (10th Cir. 2021) (unpublished) (holding that the plaintiff could seek relief

---

[3] Plaintiff requests several "declarations" in his prayer for relief.  Docket No. 32 at 26-27, ¶¶ 66, 67, 68, and 69.  However, these are not forms of prospective relief that are available under *Ex parte Young* because plaintiff's requests for declaratory relief are either not directed at a violation of federal law or are entirely directed at past violations of federal law.  *See Pruitt*, 669 F.3d at 1166.

under *Ex parte Young* because the plaintiff sought "a declaration that [defendants] continue to violate federal law" by not "implement[ing] an impartial hearing system" and plaintiff sought to preclude the future enforcement of an allegedly "unfair appeal process") (internal quotations and citation omitted); *see also New York State Ct. Clerks Ass'n v. Unified Ct. Sys. of the State of New York,* 25 F. Supp. 3d 459, 468 (S.D.N.Y. 2014) (holding that plaintiffs could not seek declaratory relief under *Ex parte Young* because it was retrospective in nature, despite plaintiffs amending their complaint "to add the phrases 'continue to violate' and 'continue to deprive' to their prayer for declaratory relief") (citations omitted).

Plaintiff asserts that the letter of reprimand "smear[s] him as a racist falsely and without evidence" and "remains a potential negative mark on Plaintiff's . . . career." Docket No. 32 at 16, ¶ 41. Plaintiff's injunctive relief seeks to direct defendants to "countermand[]" the "Letter of Reprimand (LOR)" via "a written declaration." *Id.* at 27, ¶ 70. The Tenth Circuit has not yet opined on whether the *Ex parte Young* exception applies where a plaintiff seeks to expunge harmful records. In recent authority, the Second and Ninth Circuit have reached diverging conclusions on whether expungement is a form of relief permitted by *Ex parte Young*.

In *T.W. v. New York State Bd. of L. Examiners*, the plaintiff was an applicant to the New York state bar who claimed that the New York State Board of Law Examiners (the "Board") violated her constitutional rights in failing to provide testing accommodations that resulted in her failing the bar examination. 110 F.4th 71, 77-78. The plaintiff sought to expunge her records that were maintained by the Board. *Id.* at 94. The Second Circuit held that this form of injunctive relief is "unavailable under *Ex*

parte Young because it was aimed exclusively at a *past violation*; it does not seek to
remedy an alleged *ongoing violation* of federal law." *Id.* at 95.  Specifically, the plaintiff
did not claim that "the Board's maintenance of records constitutes an ongoing violation
of her rights."  *Id.* at 94.  The Second Circuit rejected the plaintiff's argument that the
Ninth Circuit's holding in *Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) – where
the Ninth Circuit held "that expungement of negative information from university records
may be available under *Ex parte Young*, because 'they serve the purpose of preventing
present and future harm to [the plaintiff],'" – warranted a different conclusion.  *New York
State Bd. of L. Examiners*, 110 F.4th at 94-95 (quoting *Flint*, 488 F.3d at 825).  The
Second Circuit held that, while the "expungement of negative information from university
records may be available under *Ex parte Young*," the relief cannot be "aimed exclusively
at a *past violation*."  *Id.* at 95.  The Second Circuit did not read the Ninth Circuit's
holding in *Flint* to have "addressed this question" noted that it "would not be bound by its
holding even if it had."  *Id.*

    In *Jensen v. Brown*, --- F. 4th ----, 2025 WL 748139, at *14 (9th Cir. Mar. 10,
2025), the Ninth Circuit held that expungement of a negative record, such as a negative
"letters of reprimand in an employee's personnel file," is a form of injunctive relief under
*Ex parte Young*.  However, contrary to the Second Circuit's reading of *Flint* – that
expungement is available under *Ex parte Young* only where the plaintiff claims that the
record constitutes an ongoing violation of federal law – the Ninth Circuit in *Jensen*
assumes that a negative record in a personnel file is invariably an ongoing violation
because negative records "pose[] an obvious threat to career advancement" and "[s]uch
documents, or information derived from them, may stymie efforts to obtain a job

elsewhere or prevent accessing certain benefits, opportunities, or promotions at their current job." *Id.*

Here, plaintiff does not claim that the letter of reprimand was placed in his personnel file or otherwise indicate how defendants keep letters of reprimand. *See* Docket No. 32 at 5-6, 27, ¶¶ 11, 70. Moreover, it is not clear whether plaintiff is asking for expungement as a form of injunctive relief in asking that the defendants "remove" the Letter of Reprimand via a "written declaration countermanding the content" of the letter of reprimand. *Id.* at 27, ¶ 70. Therefore, the Court need not reconcile the Second and Ninth Circuit views on whether expungement as injunctive relief is permitted under *Ex parte Young* because both circuit courts, at the very least, agree that the plaintiff must claim that there is a record to expunge. *See Jensen*, 2025 WL 748139, at *14 ("the alleged violation – First Amendment retaliation – is ongoing insofar as the retaliatory records continue to exist in [plaintiff's] personnel file"); *cf. New York State Bd. of L. Examiners*, 110 F.4th at 94 (holding that *Ex parte Young* exception did not apply based, in part, on the plaintiff's failure to claim that the Board's "maintenance of records of her failures violates federal law"). Therefore, the letter of reprimand does not constitute an ongoing violation of federal law that can be remedied by prospective relief.

By contrast, plaintiff does assert that the evaluation report was "placed into Plaintiff's permanent record." Docket No. 32 at 6, at ¶ 12. He does not seek prospective injunctive relief in the form of expungement, however, as he does for the letter of reprimand. *Id.* at 27, ¶ 70. Rather, the only form of prospective relief that could apply to the evaluation report is where plaintiff seeks to enjoin defendants from "taking adverse action or withholding favorable action against Plaintiff based in whole or in part

on the exercise of his First Amendment rights while not on orders, not on duty, not in uniform, and not in breach of law and order." *Id.* Regardless of whether the evaluation report constitutes an ongoing violation of federal law, plaintiff's amended complaint does not establish the "necessary nexus between the injunctive relief [he] seeks and the continuing violation [he] alleges." *New York State Bd. of L. Examiners*, 110 F.4th at 94. Plaintiff does not establish how enjoining defendants from "taking adverse action" or "withholding favorable action" would impact the evaluation report. Docket No. 32 at 27, ¶ 70. In other words, "even if a court granted [plaintiff] the full suite of injunctive relief [he] seeks, the alleged federal law violations could continue." *New York State Bd. of L. Examiners*, 110 F.4th at 94.

Plaintiff asserts that when defendant Aarhaus executed the Non-Judicial Punishment, plaintiff was demoted from "Sergeant First Class to Staff Sergeant with a six-month suspension of the punishment contingent on Plaintiff committing no further infraction." Docket No. 32 at 5, ¶ 10. However, he does not allege that he was demoted; rather he only alleges that he could have been demoted had he committed a further infraction in the six-month period. *Id.* Therefore, he does not allege the existence of an ongoing violation of federal law as it relates to the Non-Judicial Punishment.

Plaintiff states that defendants' conduct has caused an "ongoing chilling effect on Plaintiff's religious journalism," *id.* at 16, ¶ 40, and has caused plaintiff to hold "legitimate and credible retaliation fears [that] are silencing his political speech." *Id.* at 18, ¶ 43. However, as discussed previously, an alleged, ongoing harm does not constitute an ongoing violation of federal law for *Ex parte Young* purposes. *See New*

18

*York State Bd. of L. Examiners*, 110 F.4th at 94. In the context of a First Amendment

retaliation claim, a plaintiff must show that he "continues to be retaliated against or

mistreated at work." *Kohl v. Davis*, 2021 WL 492874, at *3 (N.D. Ill. Feb. 10, 2021).

Therefore, even where plaintiff asserts that his speech has been chilled, he must

identify an ongoing, retaliatory act that is chilling his speech. Plaintiff fails to do so in

relying on past acts of alleged retaliation to support his claims: the Non-Judicial

Punishment, letter of evaluation, and evaluation report.[4]

Accordingly, the Court agrees with the magistrate judge that the Courts lacks

subject matter jurisdiction over that portion of plaintiff's First Amendment claim where he

seeks compensatory relief and retrospective declaratory relief because defendants are

entitled to Eleventh Amendment sovereign immunity. This is also true as to plaintiff's

---

[4] Plaintiff claims that the Colorado National Guard has a "continued pattern of
deprivation of its soldiers' Constitutional rights, including intimidation, retaliation, and
targeting the careers of its service members." Docket No. 32 at 8, ¶ 16. While the
existence of "acts" and "policies" that violate federal law can constitute an ongoing
violation of federal law, there must be a nexus between "the injunctive relief [plaintiff]
seeks and the continuing violations [plaintiff] alleges." *New York State Bd. of L.
Examiners*, 110 F.4th 94 (citation omitted). Plaintiff seeks injunctive relief that would
enjoin defendants from "taking adverse action or withholding favorable action against
Plaintiff" based on his First Amendment activities and that would "countermand[]" the
letter of reprimand. Docket No. 32 at 27, ¶ 70. This relief would not address the
Colorado National Guard's alleged "continued pattern of deprivation of its soldiers'
Constitutional rights," *id.* at 8, ¶ 16, but rather address plaintiff's individual, alleged
harm. Accordingly, defendants' acts or policies that allegedly perpetuate discrimination,
although an ongoing violation of federal law, is not an ongoing violation that plaintiff
alleges can be remedied by prospective relief. *See New York State Bd. of L.
Examiners*, 110 F.4th at 94 (holding that an injunction that seeks to have defendant
"maintain[] and report[] records of Plaintiff's examination results" and "take affirmative
steps to alleviate the ongoing repercussions of the discriminatory test administration
that continue to hamper Plaintiff's search for employment" did not "align with the alleged
continuing violations of federal law" that allegedly occurred through defendant's
discriminatory "acts," "policies," and "practices") (citations omitted).

request for prospective relief because *Ex parte Young* does not apply as an exception

to Eleventh Amendment sovereign immunity.  Given that the relief plaintiff seeks is

barred under the Eleventh Amendment, the Court lacks subject matter jurisdiction over

plaintiff's claim and will overrule plaintiff's first objection.

### 2.  Objection Two

The magistrate judge found that plaintiff fails to show that he has Article III

standing to pursue prospective relief based on "three past *alleged* incidents" that

include: (1) the Non-Judicial Punishment imposed by Colonel Aarhaus; (2) the

evaluation report completed by Commander McCallum and Sergeant Byrnes; and (3)

Colonel Aarhaus's "creation" of the letter of reprimand.  Docket No. 59 at 13.  The

magistrate judge found that plaintiff has not "shown an ongoing or imminently

threatened future injury or a chill to his First Amendment rights."  *Id.* at 16.  Plaintiff

objects, arguing that the evaluation report is a "soldier's official record."  Docket No. 60

at 6.  He argues that "Defendants' derogatory comments referencing 'problems with

higher-echelon officers'" will affect his potential promotion to Field Sergeant.  *Id.*

Plaintiff contends that his "next career opportunity will be determined by high-echelon

officers informed via Plaintiff's official record that Plaintiff has had 'problems with higher-

echelon officers.'"  *Id.*  He further argues that his "claims for prospective relief" are not

"rendered moot for lack of standing" due to the voluntary cessation doctrine.  *Id.* at 7.

Because the Court finds that it does not have subject matter jurisdiction over

plaintiff's claim because defendants are entitled to Eleventh Amendment immunity, the

Court need not address whether plaintiff has Article III standing or address plaintiff's

objection.  Accordingly, the Court will overrule plaintiff's second objection.

### B.  Leave to Amend

Plaintiff's remaining objections argue that the deficiencies in his complaint can be remedied by allowing him to file an amended complaint.  Plaintiff's request violates D.C.COLO.LCivR 15.1(b) which requires that "[a] party who files an opposed motion for leave to amend or supplement a pleading" to "attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through . . . the text to be deleted and underlines . . . the text to be added."  Therefore, the Court will deny plaintiff's motion for leave to amend without prejudice.

### C.  Plaintiff's Motion to Correct Objection to Court's Recommendation

Plaintiff files a separate motion for "leave to correct his objection" to the magistrate judge's recommendation.  Docket No. 61 at 1.  Plaintiff requests leave to "include additional and recently developed evidence . . . that his military career, reputation, and emotional well-being continue to be harmed by Defendants."  *Id.*  The motion seeks to add arguments to his objection that were not before the magistrate judge.  That is not permitted.  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").  To the extent that plaintiff seeks to amend his complaint to add such allegations, the Court will give plaintiff the opportunity to file a motion for leave to amend that complies with the local rules.  Accordingly, the Court will deny plaintiff's motion to amend his objection.

### D.  Non-Objected Portions of the Recommendation

The Court has reviewed the remainder of the magistrate judge's recommendation to satisfy itself that there is "no clear error on the face of the record."  Fed. R. Civ. P.

72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that the remainder of the recommendation is a correct application of the facts and the law.

## IV.    CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of the United States Magistrate Judge [Docket No. 59] is **ACCEPTED**.  It is further

**ORDERED** that Plaintiff's Objection to Court's Recommendation to Dismiss Amended Complaint is **OVERRULED** [Docket No. 60] and Motion for Leave to Amend Complaint [Docket No. 60] is **DENIED**.  It is further

**ORDERED** that Defendants' Motion to Dismiss Amended Complaint [Docket No. 41] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion to Correct Objection to Court's Recommendation [Docket No. 61] is **DENIED**.  It is further

**ORDERED** that all of plaintiff's claims are **DISMISSED without prejudice**.  It is further

**ORDERED** that plaintiff David Morrill may file a motion for leave to file an amended complaint on or before April 14, 2025.

DATED March 14, 2025

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge